NOT DESIGNATED FOR PUBLICATION

No. 117,313

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Marriage of

TODD W. FAWCETT,
*Appellant*,

and

JESSICA L. FAWCETT, NKA NICHOLS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Geary District Court; STEVEN L. HORNBAKER, judge. Opinion filed September 15, 2017. Reversed and remanded.

*Todd A. Luckman*, of Stumbo Hanson, L.L.P., of Topeka, and *Tim W. Ryan*, of Jacobson Ryan, L.C., of Manhattan, for appellant.

*Nicholas J. Heiman*, of Heiman Law Office, of Manhattan, for appellee.

Before HILL, P.J., ATCHESON and SCHROEDER, JJ.

PER CURIAM: When Jessica Nichols asked the court to establish a parenting plan so that she could have more than telephone contact with her daughter, D.A.F., the court, on its own motion, changed custody of the girl from sole to joint custody. Todd W. Fawcett, her father, who had sole custody of the girl, appeals the district court's order placing her in joint custody. Under the law, a court may modify an existing child custody order if there is proof of a material change of circumstances of the parties. Because there

1

is no evidence of any material change of circumstances here, we hold the court erred when it changed her custody.

*This is a postdivorce proceeding.*

The background facts are unremarkable. D.A.F. was born in 2006. Fawcett and Nichols married in 2007, but were divorced in 2008. Through the initial parenting plan that was approved by the court, Fawcett and Nichols agreed to share custody of D.A.F. and have her reside with Fawcett. In 2010, Nichols moved to Kentucky. After her move, the two agreed that Fawcett would have sole residential custody of D.A.F. and Nichols would be allowed to have parenting time with D.A.F. The district court approved. Problems arose.

During the spring of 2012, while D.A.F. was visiting Nichols in Kentucky, Nichols filed a complaint in that state alleging that Fawcett was abusing their daughter. D.A.F. returned to Kansas and the court granted temporary custody to her paternal grandparents. The Kentucky authorities transferred the criminal complaint to Kansas. The Geary County District Court eventually dismissed the action. After the complaint was dismissed, the court returned D.A.F. to Fawcett's custody.

The next summer, Nichols asked the Kansas court for visitation with her daughter, alleging that Fawcett was denying her visitation. At the hearing on Nichols' motion, the court admitted testimony that showed D.A.F. was seriously concerned about Nichols taking her away from Fawcett based upon the time she spent with Nichols in Kentucky. While she was with Nichols, D.A.F. was allegedly told that Fawcett was going to die in prison, her grandparents did not love her, and her dog was dead. The district court dismissed Nichols' motion, finding that it was in D.A.F.'s best interests not to have any visitation with Nichols. The district court, however, did allow Nichols to continue to call D.A.F. twice per week.

Three years later, Nichols asked the court to establish a parenting plan so that she could, at some point, have more than telephone contact with her daughter. At the hearing on her motion, Nichols was clear that she wanted this contact to begin in a therapeutic environment.

Fawcett opposed the motion, arguing that it was not in D.A.F.'s best interests to have visitation with Nichols because D.A.F. was fearful and did not want to. In support, Fawcett presented testimony from D.A.F.'s therapist about her fear of being taken by Nichols. The therapist recommended that there not be any contact between D.A.F. and Nichols. Fawcett was not alone in this recommendation.

The court-appointed guardian ad litem recommended to the court that there not be any visitation between D.A.F. and Nichols, remarking upon D.A.F.'s fear of being taken against her will by her mother. As it turns out, the court was not convinced by either the therapist's testimony or the guardian ad litem's recommendation.

In its order, the court first expressed concern with Fawcett's position that Nichols' parenting time should be disallowed because D.A.F. did not want to have visitation with her. The court said the "tail was wagging the dog." The district court believed that Fawcett and D.A.F.'s therapist had aggravated D.A.F.'s fear and corrupted her ability to think lovingly of Nichols. The court, in its order, then went far beyond what Nichols was seeking.

The court changed custody of D.A.F. from sole custody to joint custody. It set a goal of physical parenting time between Nichols and D.A.F. to begin within 6 to 12 months. The court also ordered that D.A.F.'s therapist would no longer have any professional contact with her and a new counselor would be appointed by the court—who would have discretion over the rehabilitation between Nichols and D.A.F. Additionally, the court appointed a case manager and assessed those costs to Fawcett.

In summary, while Nichols was just asking to become more involved in her daughter's life, she received, but had not requested, a change of custody with an ambitious goal of physical contact with her daughter within a year or sooner. We see no finding by the court that any of these modifications of its prior orders were in the child's best interests.

*Nichols concedes error.*

Custody decisions are hard decisions because young lives are at stake. Often caught between two competing parents, children in divorce proceedings are in difficult circumstances. For this reason, the law directs courts to adopt parenting plans to keep all parties working toward the best interests of the child. The nine goals for parenting plans—set out in K.S.A. 2016 Supp. 23-3213—come into play in all cases involving children. One of those goals is to maintain the child's emotional stability. See K.S.A. 2016 Supp. 23-3213(a)(5). Stability is important here.

Stability is hard to maintain when changes of custody occur. Simply put, final custody orders change only when there is a material change of circumstances. This is why a party must allege "all known factual allegations which constitute the basis for the change of custody" when asking the court to change a final custody order. See K.S.A. 2016 Supp. 23-3219(a). Had she sought this relief, Nichols would have had to comply with this law.

But this change of custody was done solely upon the court's own initiative. Even so, a court may change or modify a prior custody order *when a material change in circumstances is shown*. See K.S.A. 2016 Supp. 23-3218(a). The law is consistent on this point, and it does not matter whether a party or the court seeks to change a final custody order.  There must be a material change of circumstances shown. We change custody of children only for serious reasons.

4

In her brief, Nichols concedes that she made no showing of a material change in circumstances that would support a change in custody—indeed, she concedes that she did not ask the court to alter the custody arrangement for D.A.F. Based upon our review of the record and Nichols' concession, we hold there is not sufficient evidence of a material change in circumstances that would warrant a change in custody. There was no such evidence presented because the parties were not asking for, or arguing against, a change of custody. It was simply not an issue.

We reverse the district court's order modifying custody of D.A.F. Since all of the ancillary orders the court entered concerning case management, the change of therapist, and case management costs, are all based upon an erroneous change of custody, those orders are reversed as well. We remand for further proceedings so the parties can proceed with a clean slate.

Reversed and remanded.